UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT G. ARCE JR, an individual, | Case No. 1:21-cv-00489-BLW |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| OZONE COMMUNITY CORPORATION, a Japanese Corporation; HYSTERIC GLAMOUR, a wholly owned subsidiary of a Japanese Corporation; KENICHIRO KAWAMINAMI, an individual; and DOES 1 through 10 inclusive, | |
| Defendant(s). | |

## INTRODUCTION

There are a number of motions before the Court. Defendant Ozone

Community Corporation has filed a motion to dismiss for failure to serve and lack

of personal jurisdiction. Dkt. 5. Defendant Kenichiro Kawaminami has filed a

motion to dismiss for lack of personal jurisdiction,[1] Dkt. 9, and motion to strike

---

[1] Kawaminami also seeks dismissal based on lack of subject matter jurisdiction. Because the Court finds that it does not have personal jurisdiction over Kawaminami, it need not reach the issue of subject matter jurisdiction. The Court is, however, granting Arce leave to amend. If
(Continued)

Plaintiff's exhibits. Dkt. 16. Plaintiff Robert Arce has filed forms that the Court

will construe as motions for entry of default against Defendants Hysteric Glamour

and Ozone Community Corporation. Dkt. 11; Dkt. 12.

For the reasons discussed below, the Court will grant the motions to dismiss

and dismiss the complaint with leave to amend. The Court will deny the motion to

strike as moot. The Court will deny the motions for entry of default.

## BACKGROUND

Arce is a licensing agent who licenses and promotes sales of intellectual

property products through his company, Atom Age, for rock bands, sports leagues,

and other businesses. *Compl.* ¶ 10, Dkt. 1. From 2007 to 2020, he was a

commissioned licensing agent for Defendant Ozone Community Corporation, a

---

Arce chooses to do so, he must include allegations in the amended complaint that demonstrate
both personal jurisdiction and subject matter jurisdiction.

The Court also notes that the contracts at issue in this case appear to be between Ozone or
Kawaminami and Atom Age. Thus, it appears that Atom Age, and not Arce, is the real party in
interest and should therefore be a named plaintiff. If Arce chooses to file an amended complaint,
he should ensure that he has named the real party in interest as a plaintiff.

Finally, Arce is cautioned that a corporation may appear in federal court only through licensed
counsel and cannot be represented by a pro se litigant. *See Rowland v. California Men's Colony,
Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better
part of two centuries . . . that a corporation may appear in federal court only through licensed
counsel"); *Simon v. Harford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (holding that "[i]t is
well established that the privilege of representing oneself pro se . . . is personal to the litigant and
does not extend to other parties or entities").

Japanese corporation that does business in the United States as Hysteric Glamour.[2] *Id.* Ozone's principal place of business is in Tokyo, Japan. *Id.*

From approximately 2007 and through 2016, Defendant Kawaminami, who is fluent in Japanese and English, began working with Atom Age in his capacity as General Manager of Hysteric Glamour. This work involved assisting Atom Age in brokering licensing deals between Ozone and rock bands and artists, including by providing translation services. *Id.* at ¶ 11. Atom Age and Kawaminami also apparently entered into a separate, side agreement to broker license deals with several other Japanese apparel companies besides Ozone. *Kawaminami Decl.* ¶ 12, Dkt. 9-2. During this time, both Atom Age's principal place of business and Arce's residence were located in southern California. *Exhibit B*, Dkt. 5-4. Arce alleges that between 2008 and 2015, Kawaminami demanded, and extorted, 50 percent of Arce's commissions from Ozone, and caused Arce an additional tax liability. *Compl.* ¶¶ 12–15, Dkt. 1.

At the end of 2016, Hysteric Glamour closed its Los Angeles office and

---

[2] Although Arce asserts in his complaint that Hysteric Glamour is Ozone's wholly owned subsidiary, Ozone produced affidavit indicating the above facts. *See Allyn Decl.*, Dkt. 5-2, at 2. Arce did not contest this assertion. Accordingly, the Court will dismiss Hysteric Glamour as an improper party. *Williams v. Madison Cty.*, 2014 U.S. Dist. LEXIS 163191 at *16-18 (D. Idaho 2014).

Kawaminami's employment with the company ended. *Kawaminami Decl.* ¶ 15, Dkt. 9-2. The following month, in January 2017, Kawaminami started his own corporation, Three Seventy Three, Inc. (373 Inc.). Kawaminami continued to work directly with Atom Age through 373 Inc., including translating communications between Arce and Ozone. *Kawaminami Decl.* ¶ 15, Dkt. 9-2; *Compl.* ¶¶ 16–18, Dkt. 1. That work also included brokering a non-exclusive royalty-based licensing agreement between Ozone and Atom Age in January 2017. *Compl.* ¶¶ 12–15, Dkt. 1. Ozone's general practice was to pay Atom Age both the commissions Atom Age had earned and the royalties due the licensors, and Atom Age then paid the royalties to the licensors. *Id.* ¶ 20.

In January 2017, Arce—through his company Atom Age Industries Properties—and Ozone entered into a one-year royalty-based licensing agreement. *Exhibit B*, Dkt. 5-4. At that time, Atom Age and Arce were both located in California. *Allyn Decl.*, Dkt. 5-2, at 2. The agreement included California forum selection and choice of law clauses. *Exhibit B*, Dkt. 5-4. The contract was apparently renewed three times.

In February or March 2020, Arce apparently moved from California to Idaho. *Exhibit E*, Dkt 14. In the summer of 2020, a dispute arose concerning potential underpayment of royalties owed to licensors. *Kawaminami Decl.* ¶ 20,

Dkt. 9-2. The Complaint alleges that Kawaminami was responsible for preparing

royalty statements and that many of the statements prepared by Kawaminami

underreported the royalties owed to licensors. *See Compl.* ¶ 19, Dkt.1. The

Complaint further alleges that when the licensors complained about the

underpayments, Kawaminami told the licensors and Ozone that Atom Age/Arce

was responsible for underreporting the royalties due. *Id.*

In late August 2020, Arce filed articles of incorporation for Atom Age

Industries, Inc., with the Idaho Secretary of State, listing an address located in

Boise, Idaho. *See* https://sosbiz.idaho.gov/search/business (last accessed July 27,

2022).[3]

In October 2020, Kawaminami informed Arce that Ozone would continue to

directly pay Atom Age for the commissions earned but would no longer pay Atom

Age royalties and would instead pay royalties directly to the licensors. *Compl.*

¶ 20, Dkt. 1. In December 2020, Ozone terminated its relationship with Arce,

citing complaints from third parties for nonpayment of royalties. *Id.* ¶ 21. At that

time, Arce and Ozone were in a dispute over royalties payments in which the law

---

[3] The Idaho Secretary of State's website indicates that the Atom Age failed to file its
annual report in August 2021, and that the corporation was inactive as of December 4,
2021 and has been administratively dissolved. *See* https://sosbiz.idaho.gov/search/business (last
accessed July 27, 2022).

form Buchalter represented Ozone. *Allyn Decl.*, Dkt. 5-2, at 2-3.

On December 9, 2021, Arce, proceeding pro se, filed this action. He alleges claims for (1) breach of contract, (2) "intentional interference with prospective economic relations" resulting in "irreparable injury," and (3) "business and commercial disparagement, trade libel, and defamation." *Compl.* ¶¶ 22–34, Dkt. 1.

On February 7, 2022, a summons was issued to "Ozone Community Corporation / Hysteric Glamour c/o Buchalter – Russell L. Allyn." Dkt. 2 at 1. On February 22, 2022, Arce filed proof of service on Ozone indicating that the server personally served the summons on a security guard at 1000 Wilshire Blvd., Los Angeles on February 10, 2022. *Id*. at 2.

## LEGAL FRAMEWORK

### A.     Motion to Dismiss for Lack of Jurisdiction

On a motion to dismiss a complaint for lack of personal jurisdiction, "'the plaintiff bears the burden of establishing that jurisdiction is proper.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). When, as here, the "motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Id.* (citation omitted). If the defendant offers evidence in support of the motion, the "plaintiff may not simply rest on the 'bare allegations of [the] complaint.'" *Id.* (citation omitted) (alteration in the original). Instead, the

plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) (citation omitted). However, "uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Ranza*, 793 F.3d at 1068 (citation omitted).

Where, as here, there is no applicable federal statute governing the assertion of personal jurisdiction over an out-of-state defendant,[4] the district court applies the law of the forum state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). However, the assertion of personal jurisdiction under the law of the forum state must also be consistent with

---

[4] Arce argues that personal jurisdiction over both Kawaminami and Ozone exists under Section 12 of the Clayton Antitrust Act, 15 U.S.C. § 22, which allows for national contacts analysis in antitrust litigation. *See Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004). Arce has not, however, alleged an antitrust violation in his complaint, nor has he alleged facts that would support such a claim. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999) ("A plaintiff may only pursue an antitrust action if he can show antitrust injury," which, in turn, requires a showing of "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent"); *Action Embroidery Corp,* 368 F.3d at 1176-80 (examples of antitrust violations include price fixing, market allocation agreements, or other market-control schemes). Thus, the Clayton Antitrust Act is inapplicable here and does not provide a basis for asserting personal jurisdiction over either defendant.

the Due Process Clause. *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

Idaho's long-arm statute, codified at Idaho Code § 5-514, allows a broader assertion of personal jurisdiction than allowed under the Due Process Clause. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 n.2 (D. Idaho 2009). Thus, under Idaho law, personal jurisdictional analysis and federal due process analysis are the same. *Id.*

The exercise of personal jurisdiction over an out-of-state defendant complies with federal due process "only if he or she has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (internal quotation marks and citation omitted). "Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant." *Doe v. Unocal Corp*., 248 F.3d 915, 923 (9th Cir. 2001).

## B.    Motion to Dismiss for Insufficient Service

Rule 12(b)(5) permits the Court to dismiss a case when the plaintiff fails to serve a defendant in compliance with Rule 4. *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). Service on a foreign corporate defendant in a judicial district of the United States must be "valid and complete under both state

law and the Due Process Clause." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988).

"Once service is challenged" the plaintiff bears "the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If a defendant is not properly served, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice as to that defendant or order that service be made in a specified time." Fed. R. Civ. P. 4(m). The Court "must extend the time for service" if plaintiff shows good cause for the failure, and "may extend time for service" if plaintiff shows excusable neglect. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009).

## ANALYSIS

### A.   The Court Lacks Personal Jurisdiction Over Kawaminami.

#### 1.  General Jurisdiction

The "minimum contacts" required for general jurisdiction "are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum." *Yahoo!*, 433 F.3d at 1205 (citation omitted). This "fairly high" standard for general jurisdiction requires evaluating whether the defendant "solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)

(citation omitted).

For example, in *Perkins v. Benguet Consol. Mining Co. et al.*, 342 U.S. 437 (1952), a Philippine mining company was sued in Ohio state court for a claim that did not arise in Ohio and did not relate to the company's activities in Ohio. The Supreme Court found the following contacts with the forum to sufficient to support the assertion of general jurisdiction: the president of the mining company established an office in Ohio at which the president kept company files and held directors' meetings, carried on business-related correspondence, distributed salary checks drawn on active Ohio bank accounts, engaged an Ohio bank to act as a transfer agent, and supervised the rehabilitation of the mining company's properties in the Philippines. *Id.* at 448.

In contrast, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), the Supreme Court found the contacts with the forum to be insufficient to establish general jurisdiction. *Id.* at 417. The defendant was a Columbian helicopter company sued in Texas state court for a wrongful death claim that arose out of a helicopter crash in Peru. The company did not have a place of business in Texas, and had never been licensed to do business in Texas. Further, the company's contacts with Texas were limited to "sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank

account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter [located in Texas] for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training." *Id.* at 416. These "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id*. at 417.

Here, Kawaminami resides in California, and it is undisputed that he has "never even visited Idaho." *Kawaminami Br.*, Dkt. 9; *see Bristol-Myers Squibb Co. v. Superior Ct.*, 127 S. Ct. 1773, 1780 (2017) (citation omitted) ("the paradigm forum" for assertion of general jurisdiction" is a person's domicile). Further, Arce has presented no evidence demonstrating that Kawaminami has otherwise had substantial contacts with Idaho. The exhibits Arce attached to his brief indicate that Kawaminami sent an invoice to Atom Age at a Boise, Idaho address in August 2020;[5] that Atom Age apparently made payments to Kawaminami in May and September 2020, during a time Arce indicates he was located in Idaho; and that Arce stated in a text message to Kawaminami in February 2020 that he (Arce) was

---

[5] The Complaint alleges that a licensing agreement between Kawaminami and Atom Age was entered into in 2017. Other evidence in the record demonstrates that, at that time, Atom Age was based in California and that both Arce and Kawaminami were residing in California. It appears that the 2020 invoice that Kawaminami sent to Atom Age at the Boise, Idaho address is based on that 2017 agreement.

in the process of moving. *Ex. B-E*, Dkt. 14. These contacts are neither systematic

nor continuous and are far less than the contacts the Supreme Court found to be

insufficient to establish general jurisdiction in *Helicopteros*. Accordingly, Arce has

failed to demonstrate the minimum contacts necessary for this Court to assert

general jurisdiction over Kawaminami.

### 2. Specific Jurisdiction

The "minimum contacts" required for specific jurisdiction may be "less

substantial" than for general jurisdiction. *Doe*, 248 F.3d at 923. Specific, or

"case-linked," jurisdiction requires the "defendant's suit-related conduct" to have

"a substantial connection with the forum state." *Walden*, 571 U.S. at 284, 284 n.6

(2014) (citation omitted). The determination of minimum contacts for specific

jurisdiction focuses not on the plaintiff's contacts with the forum, but on "the

relationship among the defendant, the forum, and the litigation." *Id.* at 283–84.

The Ninth Circuit uses a three-prong test to determine whether the assertion

of specific jurisdiction is appropriate:

> *First*, [t]he non-resident defendant must purposefully direct [his or her] activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *Second*, the claim must arise out of or relate to the defendant's forum-related activities. *Finally*, the exercise of jurisdiction must be reasonable.

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Cholom, S.A.*, 972
F.3d 1101, 1107 (9th Cir. 2020) (internal quotations and citations omitted)
(emphasis added).

The plaintiff bears the burden of demonstrating the first two elements.
*Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If the plaintiff is able to
satisfy the first two elements, then the burden shifts to the defendant to make "a
compelling case" that the exercise of jurisdiction over a nonresident defendant
would be unreasonable. *Id.* (citation omitted)

### a. Purposeful Availment and Purposeful Direction

The first prong of the specific jurisdiction test is satisfied if the defendant
either (1) purposefully avails themself of the privilege of doing business in the
forum, or (2) purposefully directed activities at the forum. *See Yahoo!*, 433 F.3d at
1206.

### i. Purposeful Availment – Contract Claim

To satisfy purposeful availment, the defendant must have performed some
type of activity that "allows or promotes the transaction of business within the
forum state." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991).
Analyzing purposeful availment typically involves an evaluation of evidence
pertaining to "executing or performing a contract" in the forum. *Schwarzenegger*,

374 F.3d at 802. However, "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citation omitted). Additional factors such as "prior negotiations with contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Doe*, 248 F.3d at 924 (citation omitted).

Here, Arce argues that the requirements for specific jurisdiction are met because Kawaminami "conducted business in the State of Idaho with Plaintiff throughout most of fiscal 2020." *Pl.'s Resp Mot. D.* at 1, Dkt. 13 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945); *Idaho v. M.A. Hanna Co.*, 819 F. Supp. 1464 (D. Idaho 1992)). However, according to the allegations in the Complaint, the contracts at issue were entered into when Atom Age was based in California, and when both Arce and Kawaminami resided in California. There is no evidence the contracts were negotiated or executed in Idaho, or that Kawaminami reached out to Idaho or otherwise purposefully availed himself of the privilege of doing business in Idaho. Nor is there evidence that the contracts were performed in Idaho. The only evidence of Kawaminami's contacts with Idaho are, again, that Kawaminami, through his company 373 Inc., sent an invoice to Atom Age at a Boise, Idaho

address, and apparently received two payments from Atom Age while Arce was residing in Idaho as a result of Arce's unilateral choice to move to Idaho in 2020. These limited contacts are insufficient to show purposeful availment. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (To satisfy purposeful availment, the defendant must have performed some type of activity that "allows or promotes the transaction of business within the forum state.")

Arce's reliance on *International Shoe* to argue that there is specific jurisdiction is misplaced. In *International Shoe*, the defendant's contacts with the forum state included the employment of eleven to thirteen salespeople in the forum state over a period of years. 326 U.S. at 320. In contrast, here the only contacts that Kawaminami had with Idaho are the invoice and the two payments, all of which occurred after Arce made a unilateral choice to move to Idaho in 2020.

In sum, the record fails to show that Kawaminami purposefully availed himself of the privilege of doing business in Idaho. There is therefore no specific jurisdiction over Arce's breach of contract claim.

### ii.  *Purposeful Direction – Tort Claims*

The purposeful direction test, rather than the purposeful availment test, applies to Arce's tort claims. *See Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1011 (D. Idaho 2010). Purposeful direction is analyzed in the Ninth Circuit using an

"effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. To satisfy the effects test, a plaintiff must demonstrate that the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted).

The first prong of this test—the commission of an intentional act—is satisfied here. Arce alleges that Kawaminami intentionally prevented Arce "from successfully establishing and/or maintaining business relationships with other parties, and [has] improperly interfered with Plaintiff's business endeavors." *Compl.* ¶ 27, Dkt. 1. Further, Arce alleges that Kawaminami "made a number of false statements to Plaintiff's business associates regarding underreported royalty payments." *Id.* ¶ 32.

Arce has not, however, satisfied the second prong of the test—express aiming. To satisfy this prong, there must be "individualized targeting" of the plaintiff. *Bancroft & Masters*, 223 F.3d at 1088. For example, in *Bancroft & Masters*, the Ninth Circuit found purposeful direction where the defendant's accusatory letters specifically targeted the plaintiff corporation, which was doing business almost exclusively in the forum state. *Id.*

Similarly, in *Calder*, the Supreme Court found the actions of the

defendants—a reporter and editor in Florida—were expressly aimed at California because the defendants wrote and edited the allegedly libelous story knowing it would have a potentially devastating impact on the plaintiff, and knowing that the brunt of that impact would be felt in California, where the plaintiff lived and worked. 465 U.S. at 789-90. The Supreme Court rejected the notion that the defendants' conduct was "mere untargeted negligence," finding that it was instead expressly aimed at the plaintiff and the forum state of California. *Id.* at 789.

As another example, in *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1011 (D. Idaho 2010), this Court found that the nonresident defendants' defamatory statements about plaintiffs' products posted on a website were not specifically aimed at Idaho, but that the defendants' selling of their products to a company with its principal place of business in Idaho was "activity expressly aimed at the forum state," as was shipping those products to that business's Idaho warehouse for distribution to customers, including customers located in Idaho. *Id.*

Here, the Complaint alleges that Kawaminami's defamation of Arce included individualized targeting, such as making "a number of false statements to Plaintiff's business associates regarding underreported royalty payments," resulting in "lost business and revenue." *See Compl.* ¶ 34, Dkt. 1. There are, however, no allegations or evidence demonstrating that Kawaminami targeted

Idaho. Indeed, as discussed, the only contacts Kawaminami had with Idaho are sending an invoice to Idaho and receiving a couple of payments from Atom Age while Arce was living in Idaho. Further, there is no evidence that any of the business relationships with which Kawaminami allegedly interfered are based in Idaho, or that Idaho was in any other manner targeted.

Arce has failed to show that Kawaminami purposefully directed his activities at Idaho. The Court therefore lacks personal jurisdiction over him.

### B.   The Court Lacks Personal Jurisdiction Over Ozone.

As an initial matter, Ozone is not subject to general jurisdiction in Idaho. It is undisputed that that Ozone's primary place of business is in Japan, and that Ozone is not incorporated in Idaho. Arce has not shown that Ozone has contact with Idaho that would justify finding this as "exceptional case" in which general jurisdiction would be available despite those facts. *Martinez*, 764 F.3d at 1070. At best he has offered a single invoice. *Exhibit A*, Dkt. 14. Therefore, only the question of specific jurisdiction is at issue. To determine that question, the Court will examine Ozone's contacts with the forum through the Ninth's Circuit's three-prong test.

The first prong of the Ninth Circuit's specific jurisdiction test is purposeful availment and purposeful direction. *Schwarzenegger*, 374 F.3d at 802. One more, the Court will apply a purposeful availment analysis to Arce's contract claim

against Ozone and will apply the purposeful direction analysis to his tort claims.

### 1.  Purposeful Availment – Contract Claim

For a contract claim subject to a purposeful availment analysis, the Ninth Circuit directs courts to determine "whether a defendant has minimum contacts with a forum" by "evaluat[ing] the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim." *Glob. Commodities Trading Grp.*, 972 F.3d at 1107. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. But a contract between a forum resident and a non-resident will not give rise to specific jurisdiction in the forum when "the business relationship between the parties was fleeting or its center of gravity lay elsewhere." *Id.*

That standard is not met here. The contract that gave rise to this dispute was signed when Arce lived in California and when Atom Age's principal place of business was in California. The contract contains California forum selection and choice of law clauses, indicating that neither party anticipated litigation in Idaho. *Exhibit B*, Dkt. 5-4. About 75 percent of the performance—from January 2017 to February 2020—took place in California. Although Arce offers an invoice from

Ozone that shows that they shipped merchandise from their Japanese offices to his Idaho location on one occasion, this demonstrates at best that Ozone was aware that Arce relocated and performed one quarter of the contract in Idaho. *Exhibit A*, Dkt. 14. But a contract between a citizen of the forum and a non-citizen is not enough to establish purposeful availment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

### 2.  Purposeful Direction – Tort Claims

Next, the Court considers a tort claim through a purposeful direction analysis, which, as discussed previously, is governed by the *Calder* effects test. If a defendant "(1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state, then the defendant has purposefully directed conduct at the forum state." *Burri Law Pa. v. Skurla*, No. 21-15271, 2022 U.S. App. LEXIS 15347, at *12 (9th Cir. June 3, 2022) (citations omitted).

Here, Arce has not satisfied the *Calder* effects test. As discussed previously, Arce moved to Idaho in February 2020. Most of his complaint discusses events that expressly happened before then. And many critical parts of his complaint fail

to establish jurisdictional facts. For instance, Arce says that at an unknown time after January 2017, Kawaminami told licensors that he, Arce, "was responsible for underreporting the royalties" and did so "at the behest of Ozone." *Complaint*, Dkt. 1 at ¶ 19. In the remainder of his complaint, Arce makes conclusory statements, rather than alleging specific acts. *See, e.g.*, *Id.* at ¶ 27 ("Defendants have committed intentional acts to prevent Plaintiff from successfully establishing and/or maintaining business relationships with other parties, and have improperly interfered with Plaintiff's business endeavors."); *Id.* at ¶ 32 ("Defendants made a number of false statements to Plaintiff's business associates regarding underreported royalty payments.").[6]

The Court is skeptical that there are enough facts here to identify intentional acts. But even taking all of Arce's allegations as true and treating the alleged

---

[6] Arce does make two allegations that expressly occurred when he was in Idaho and when Ozone knew he was in Idaho, based on the invoice. *Exhibit A*, Dkt. 14. He claims that in October 2020 "Ozone decided to pay licensors' royalties directly and pay Plaintiff's commissions separately." *Complaint*, Dkt.1 at ¶ 20. And he says that in December 2020, "Ozone terminated its relationship with Plaintiff, citing complaints from third parties of non-receipt of royalties as reported by Kawaminami." *Id.* at ¶ 21.

Accepting these two facts are true, Arce basically claims that Ozone breached its contract with him while he was located in Idaho. Neither of these alleged acts fall within the scope of Arce's second or third claim. Rather, they go to his breach of contract claim. So even though Arce was located in Idaho at the time of these alleged acts, the court will not consider them in considering whether Arce has asserted facts about his second and third claims that satisfy the *Calder* effects test.

actions as intentional acts, the Court cannot conclude that any of these acts were expressly aimed at Idaho. Arce does not allege that he lived in Idaho when these acts occurred. He does not allege any other facts that would tie these alleged acts to Idaho. *See Burri Law Pa.,* No. 2022 U.S. App. LEXIS 15347, at *16-17 (explaining that in *Calder*, the jurisdictional analysis "focused on the relationship between the defendants, the forum [California], and the litigation, examining the various contacts the defendants had created with California (and not just with the plaintiff), including making phone calls to California and circulating false statements in California.") (cleaned up). He does not allege that the interfering acts or false statements were made in Idaho, sent to Idaho, or focused on his activities in Idaho. He does not allege that the communications were made "for the very purpose of having their consequences felt" in Idaho. *Id.* In short, Arce has not alleged facts that would allow the Court to conclude, explicitly or by inference, that Ozone committed intentional acts that were expressly aimed at Idaho and that caused harm that Ozone knew was likely to be suffered in Idaho.

### C.    Leave to Amend

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008). "However, liberality

in granting leave to amend is subject to several limitations. Those limitations

include undue prejudice to the opposing party, bad faith by the movant, futility,

and undue delay." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d

1047, 1058 (9th Cir. 2011) (citations and internal quotation marks omitted); *see

also Waldrip*, 548 F.3d at 732.

Although Arce has not alleged facts demonstrating the Court has personal

jurisdiction over either defendant, and the Court finds it unlikely that he will be

able to do so, the Court will grant Plaintiff leave to file an amended complaint if he

believes that additional facts will establish the existence of personal jurisdiction

under the applicable standards.

### D.    Arce Did Not Properly Serve Ozone.

Arce attempted to serve Ozone, a foreign corporate defendant, in California,

a judicial district of the United States. That service must therefore be "valid and

complete under both state law and the Due Process Clause." *Volkswagenwerk

Aktiengesellschaft*, 486 U.S. at 707. California law provides that service may be

completed by leaving a copy of the summons and complaint at the defendant's

usual place of business "in the presence of a . . . person apparently in charge of his

or her office [or] place of business" and, then, mailing a copy of the summons and

complaint "by first-class mail, postage prepaid to the person to be served at the

place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code

§ 415.20(b). Here, Arce's service on Ozone does not meet those requirements.

As an initial matter, service only include the summons and the first page of the complaint. *Exhibit A*, Dkt. 5-3. This alone makes service insufficient. Moreover, service was made on a security guard in the Wedbush Center office building that houses Buchalter as well as other companies. *Allyn Decl.*, Dkt. 5-4 at 3. The security guard of the entire commercial building cannot be said to be in charge of Buchalter's place of business. And Arce did not mail a copy of the summons and complaint to Allyn after serving the security guard.

The even bigger problem for Arce, however, is that even if service on Buchalter had met those requirements, it would not have been effective service on Ozone. California law requires that service on corporations be made on an officer, general manager, agent for service of process, or person authorized by the corporation or by Section 2110 of the Corporations Code to receive service of process. Cal. Civ. Proc. Code § 416.10. Section 2110 of the Corporations Code provides that service on foreign corporations may be made through people such as corporation's officers, "the general manager in the state," a designated corporate agent, or another person designated as the corporation's agent for service of process. Cal. Civ. Proc. Code § 2110.

Allyn is not authorized to receive service of process on Ozone's behalf. He

does not occupy any of those positions set out in California law. Rather, he is an attorney who Ozone hired to work on the particular issue of the royalties dispute with Arce. *Allyn Decl.*, Dkt. 5-4.

Because Ozone has not been properly served, the Court must determine whether to dismiss the action without prejudice or order that service be made in a specified time. The Court will reluctantly allow Arce more time to complete service. On some level, because he argues only that service is proper, Arce has shown neither good cause nor excusable neglect for his failure to serve. His argument represents a misunderstanding of the law of service by a pro se litigant. Accordingly, having clarified the issue, the Court will give Arce a brief window to complete service. The Court will extend the time for service 30 days to allow for proper service to be made. If proper service is not made within that time this case will be dismissed without further notice.

### E.    Entry of Default is Not Appropriate.

In March 2022, Arce filed two copies of the Court's form for an entry of default—one for Hysteric Glamour (Dkt. 14) and one for Ozone Community Corporation (Dkt. 15). The Court will construe these as motions for entry of default. An entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Here, as

discussed previously, Hysteric Glamour is not a proper party to the case. Ozone is not in default because it defended with a motion to dismiss under Rule 12. Accordingly, Arce's motions are denied.

## ORDER

**IT IS ORDERED that:**

1. Defendant Kawaminami's Motion to Dismiss (Dkt. 9) is **GRANTED**.

2. Defendant Ozone's Motion to Dismiss (Dkt. 5) is **GRANTED.**

3. Plaintiff is granted leave to file an amended complaint within 30 days of the date of this order.

   a. If Plaintiff fails to timely file an amended complaint, or files an amended complaint that fails to comply with the guidelines set forth above, this case may be dismissed without further notice.

4. Plaintiff is granted 30 days from the date of this order to properly serve Ozone and file notice of service with the Court.

   a. If Plaintiff fails to do so, the claims against Ozone may be dismissed without further notice.

5. Defendant's Motion to Strike (Dkt. 16) is **DENIED**.

6. Plaintiff's Motions for Entry of Default (Dkt. 11; Dkt. 12) are **DENIED**.

7. Defendant Hysteric Glamour is **DISMISSED** as an improper party.

DATED: September 29, 2022

B. Lynn Winmill
U.S. District Court Judge